376 So.2d 858 (1979)
THE FLORIDA BAR, Complainant,
v.
David L. SHANNON, Respondent.
No. 57322.
Supreme Court of Florida.
November 1, 1979.
John A. Weiss, Bar Counsel, Tallahassee, for complainant.
David L. Shannon, in pro. per.
PER CURIAM.
This disciplinary proceeding against David L. Shannon is before us on complaint of The Florida Bar and report of the referee. No petition for review has been filed.
The referee made the following findings of fact pertinent to Shannon's misconduct:
C. On February 10, 1963, Louis B. Schofield died in New Smyrna Beach, Florida, leaving an estate initially estimated to be worth $20,597.90 (Amended Report of Appraisers filed July 22, 1963). Assets listed in the estate were (1) real estate  appraised value $12,000; (2) cash  $6,105.42; and (3) personal property  appraised value $2,492.48.
D. The principal asset of the Schofield estate was the decedent's residence at 502 Ellison Avenue, New Smyrna Beach, Florida. This residence was sold after approval by probate court to Mr. and Mrs. George W. Holden for $8,500 on December 30, 1964. The Schofield estate realized $3,762.07 from the sale.
E. Pursuant to the terms of Mr. Schofield's will respondent was named executor of the Schofield estate. Respondent also served as attorney for the executor.
F. Mr. Schofield's will left a specific bequest of $1,000 to Susan Clievely and the remainder of the estate was to be split up among three residuary legatees, one of whom was the complainant, Raymond G. Parkhurst.
G. Other than the $1,000 bequest to Mrs. Clievely and some personal property to the residuary legatees, no legatee received any assets from the Schofield estate.
H. Although there was pressure from Mr. Parkhurst in 1963 and 1964 on respondent to close out the estate Mr. Parkhurst and the other heirs did not pursue the matter after March 1965 until August 1976. At that time Mr. Parkhurst inquired of respondent in his office as to the status of the Schofield estate. Mr. Shannon gave an inconclusive response to the inquiry.
I. After meeting with respondent, Mr. Parkhurst retained attorney Thorwald J. Husfeld to check on the status of the estate. It was then determined that after the probate court's December 22, 1964, order authorizing the sale of the Schofield house the only record activity on the estate was respondent's Petition for Fees for Executor and for Attorney for Executor filed on February 25, 1965, accompanied by a Notice of Hearing, and a second Notice of Hearing filed by respondent on March 12, 1965.

*859 J. It was also determined by Mr. Parkhurst's attorney that no accounting had ever been filed by respondent in the Schofield estate and that it had been dismissed sua sponte by the probate court on November 20, 1972, for lack of action or inquiry.
K. On August 11, 1976, the probate court set aside its November 20, 1972, order of discharge and ordered respondent to immediately explain why there had been no accounting, no plan of distribution and no receipts from beneficiaries filed and to advise the court of the status of the estate.
L. Respondent replied to the court's order by filing a report on August 19, 1976, in which he stated that there were no assets in the estate for distribution and that he would promptly file an accounting.
M. On January 25, 1977, upon petition for rule to show cause filed by Mr. Parkhurst's attorney after respondent filed no accounting, the probate court issued its Order for Rule to Show Cause commanding respondent to appear before the court on February 25, 1977.
.....
AC. Respondent disbursed at least $3458.00 to himself by estate account checks payable to himself or to cash which he endorsed over to himself. Respondent acknowledges receiving these sums (Tr. 67). The one exception was a check for $100.00 dated August 8, 1963, which was endorsed by both respondent and Sylvia Van Kleeck. Respondent testified that the check was endorsed over to Mrs. Kleeck to pay her wages for doing secretarial work on the estate (Tr. 72). This was not verified by any evidence. His final accounting under description of disbursements makes no mention of this disbursement. The referee notes that this check is marked as "operating expenses" and not secretarial wages.
AD. Although the various checks made payable to respondent and to cash are marked as for "return of court costs," "current expenses re: administration," "operating expenses," etc., there are no receipts attached to the final accounting or presented into evidence before me indicating the nature or legitimacy of such expenses. Respondent testified that most of the money was paid to himself for labor (Tr. 5, 75).
AE. In addition to the sums disbursed to himself respondent received the $3,556.89 remaining in the Schofield estate account in April 1965. Respondent testified in his deposition that he assumed this sum was transferred into his escrow account in connection with the services that he performed (Depo. 39). At final hearing he testified that this sum was withdrawn from his trust account and paid to him for labor he expended on behalf of the estate (Tr. 108).
AF. Respondent received a total of $7,014.89 from the estate of Louis B. Schofield.
AG. In the final accounting respondent filed he acknowledges receipt of only $4,417.76. Respondent was unable to account for the difference between the $4,417.76 he acknowledges receiving and the $7,014.89 he actually received.
AH. In the final accounting respondent claimed the estate owed him an additional $2,214.74 for wages.
AI. Respondent billed the Schofield estate $6,412.50 for 855 hours of physical labor at $7.50 per hour by himself on behalf of the estate. Respondent was unable at final hearing to document those hours claimed. The referee also notes that although respondent claims $7.50 per hour for his menial and custodial services (Tr. 5, 75) that in at least one other instance he only paid $2.50 per hour for yard work to another individual (Estate Account check number 81). Respondent testified that as part of his physical rehabilitation from a mental breakdown that he did work on the estate that normally he would have had somebody else do (Tr. 115) (Depo. 17). If this is so, respondent should have paid himself laborer's wages.
AJ. Respondent's 855 hours worked on the Schofield estate constitutes an excessive *860 amount of time spent by respondent doing physical work on an estate of the nature of the Schofield estate. Other than an abundance of personal property there was nothing difficult about the estate that necessitated such an expenditure of time. Respondent averaged over 35 hours a month working on the estate. The referee notes that respondent testified that he charged $7.50 per hour for his time spent spending evenings at the Schofield house guarding against vandalism (Tr. 124).
AK. Respondent's 855 hours and $7,000 worth of efforts on behalf of the Schofield estate netted the estate (according to respondent's final accounting) $432.55 proceeds from the sale of personal property, $3,762.07 proceeds from the sale of the house and $527.02 in other proceeds for total income to the estate of $4,721.09.
AL. Respondent's final accounting lists other assets (besides $6,105.42 in principal cash and $4,721.09 income cash) valued at $14,492.89 for a total estate value of $25,318.99. The disposition of the $14,492.89 in other assets cannot be determined from respondent's records or from his final accounting.
AM. In his final accounting under the Disbursement subcategory "Brief Description of Items" the referee notes that respondent only lists one of the checks he disbursed to himself, i.e., check 43 dated October 9, 1963 made payable to cash and marked "Necessary expenses in moving sold Personalty from residence." The other $3,258 respondent disbursed to himself is not specifically itemized. However, respondent did list maintenance disbursements to himself on approximately a monthly basis amounting to $1,526. There is no correlation between the hours respondent listed as having worked at the Schofield house and the monthly maintenance disbursements. There is also no correlation between the maintenance disbursements listed and the checks actually issued to respondent.
AN. I find that respondent's figures in his final accounting are so inaccurate and so misleading as to suggest misrepresentation to the court and is conduct that is prejudicial to the administration of justice.
AO. I find that by charging $7.50 per hour for physical labor performed by respondent on behalf of the Schofield estate in 1963 and 1964 when respondent paid $2.50 for similar labor by others constitutes a clearly excessive fee. I find that by claiming attorney's and executor's fees over and above the $7,014.89 he has received as wages respondent is also attempting to collect a clearly excessive fee for his total services to the Schofield estate.
AP. I find that respondent has neglected a legal matter entrusted to him by the following:
1. Failing to file annual accountings as required by law;
2. Failing to timely file a final accounting;
3. Failing to promptly comply with the probate court's August 1976 order requiring respondent to file a final accounting;
4. By failing to timely close out the Schofield estate.
AQ. I find that respondent's failure to properly handle the Schofield estate is of such magnitude that it constitutes an intentional failure to carry out the contract of employment (although the contract is implied) with his client, the estate of Louis B. Schofield.
AR. I find that respondent's failure to properly handle the Schofield estate has resulted in prejudice or damage to his client, the estate of Louis B. Schofield, by failure to disburse to those entitled to receive the proceeds of the Schofield estate their funds in a timely manner.
AS. I find that respondent has failed to maintain complete records of all funds and other property of his client, the Schofield estate, coming into his possession and he has failed to render appropriate accountings regarding the funds and property.

*861 AT. I find that respondent has failed to promptly deliver funds he holds in trust to the proper recipients of those funds.
Our review of the record reveals that the referee's findings are supported by the evidence.
The referee recommends that Shannon be found guilty of the following violations:
A. Canon 11 of the Canons of Ethics in effect in Florida prior to October 1, 1970;
B. Rules one and 27 of the Additional Rules Governing the Conduct of Attorneys in Florida prior to October 1, 1970;
C. Disciplinary Rules 1-102(A)(4), 1-102(A)(5), 2-106(A), 6-101(A)(3), 7-101(A)(2), 7-101(A)(3), 9-102(B)(3) and 9-102(B)(4);
D. Integration Rules 11.02(3)(a) and 11.02(4).
We approve this recommendation, and we find Shannon guilty of these violations.
As to the disciplinary measure to be imposed, the referee recommends that Shannon be suspended for three months and one day and thereafter until he shall prove rehabilitation and until he meets the following conditions:
A. Payment of all costs assessed against him in this disciplinary proceedings;
B. Distribution by respondent to the heirs of the estate of Louis B. Schofield pursuant to the terms of Mr. Schofield's will the amount of $5,000 together with interest at the rate of 6% per annum since June 1, 1965.
We approve the referee's recommended discipline and hereby suspend Shannon for three months and one day and thereafter until he proves rehabilitation and meets the conditions suggested by the referee. This suspension shall be effective December 3, 1979, thereby giving Shannon thirty days to close his practice and to take the necessary steps to protect his clients. Costs in the amount of $973.84 are hereby taxed against the Respondent.
It is so ordered.
ADKINS, Acting C.J., and BOYD, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.